**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------X
UNITED STATES OF AMERICA            :
                                    :
    -against-                       :   No. 18 Cr. 425 (JFK)
                                    :
LAWRENCE MCAFEE,                    :   **OPINION & ORDER**
                                    :
                    Defendant.      :
------------------------------------X

APPEARANCES

FOR DEFENDANT LAWRENCE MCAFEE:
    Scott B. Tulman
    LAW OFFICES OF SCOTT B. TULMAN & ASSOCIATES, PLLC

FOR THE UNITED STATES OF AMERICA:
    Ryan B. Finkel
    U.S. ATTORNEY'S OFFICE FOR THE SOUTHERN DISTRICT OF NEW YORK

**JOHN F. KEENAN, United States District Judge:**

   Before the Court is a motion by Defendant Lawrence McAfee seeking his release from federal custody and dismissal of the Indictment.  For the reasons set forth below, McAfee's motion is GRANTED in part and DENIED in part.

   **I.  Background**

   On June 14, 2018, McAfee was charged with one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951, and one count of Hobbs Act robbery, in violation of 18 U.S.C. § 1951 and 2.  (Indictment, ECF No. 9.)  The charges stemmed from the robbery of a pharmacy in downtown Manhattan by McAfee and two other men and their attempted robberies of two other pharmacies in the same area on the

morning of February 22, 2018.  (Compl., ECF No. 1.)  McAfee was arrested on February 28, 2018, after he admitted his criminal conduct to a New York City Department of Homeless Services representative.  Following his arrest, McAfee was interviewed by law enforcement, during which he waived his Miranda rights and confessed to the robbery and attempted robberies.

On June 19, 2018, McAfee was arraigned and entered a plea of not guilty before the Court.  During the hearing, the Government moved, with McAfee's consent, for a psychiatric examination pursuant to 18 U.S.C. § 4241(b) to assess McAfee's competency to stand trial.  The Court ordered the examination.  Since then, McAfee has remained in federal custody and under evaluation and treatment by the Federal Bureau of Prisons (BOP).

On March 29, 2019, the BOP provided a forensic evaluation of McAfee which concluded that "McAfee's competency related skills are significantly compromised by presently exacerbated symptoms of a serious mental illness or defect, namely, Schizoaffective Disorder, such that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  (Ex. E to Decl. of Scott B. Tulman at 11, filed under seal.)  On November 25, 2019, the BOP further opined that McAfee's "mental condition continues to render him not competent to proceed to trial."  (Ex. G to Decl. of Scott B. Tulman at 7, filed under seal.)

On March 31, 2020, the BOP provided an update to the Court regarding its attempts to restore McAfee's competency.  (Ex. C to Opp'n, filed under seal.)  The BOP's report explained that, despite McAfee's full compliance with his psychotropic medication regime, "McAfee's mental health symptoms continue to interfere with his ability to rationally proceed in the criminal matter."  (Id. at 5.)  The BOP further opined that "it appears the probability of restoring [McAfee's] competence in the foreseeable future is low."  (Id.)

On September 23, 2020, at the request of both parties, the Court entered an order directing the BOP to evaluate McAfee pursuant to 18 U.S.C. § 4246 to determine whether his mental disease "would create a substantial risk of bodily injury to another person or serious damage to property of another" should McAfee be released from custody.  (ECF No. 46.)  The BOP submitted the requested report on November 24, 2020, opining that McAfee "does not presently suffer from a mental illness or defect that increases his risk of violent ideation, intent, or behavior," and his "release from custody would not present a substantial risk of bodily injury to others or serious damage to the property of another due to mental illness."  (Letter from T. Scarantino, Complex Warden, to Hon. John F. Keenan at 9 (emphasis in original), filed under seal.)  The BOP's report, however, noted certain serious risk factors related to McAfee's

3

illness that could give rise to a risk of danger and cautioned that "[t]he prediction of future violence is very difficult and declines in accuracy over time." (Id. at 7–9.)

On December 17, 2020, McAfee (through his counsel) submitted a motion seeking (1) McAfee's discharge from federal custody together with an order directing the BOP to test him for the coronavirus, COVID-19, and place him in quarantine before his release, as well as an order directing the U.S. Marshals Service (USMS) to transport him to his mother's home in New Jersey; and (2) that the Indictment in this case be dismissed without prejudice pursuant to Federal Rule of Criminal Procedure 48(b)(3). (ECF No. 54.) On December 24, 2020, the Government filed an opposition in which it agreed that McAfee should be released but opposed dismissal of the Indictment. (ECF No. 57.) McAfee filed a reply on December 28, 2020. (ECF No. 58.)

On January 5, 2021, the Court heard the motion during an in-person conference with counsel for McAfee and the Government. At that hearing, neither side disputed that McAfee is presently not competent to stand trial and the likelihood of his regaining such competency is minimal. (Jan. 5, 2021 Conference Tr. ("Tr.") at 2:1–3:6, ECF No. 59.) Both parties also agreed that there was no need for a separate hearing regarding McAfee's competency or whether he is a danger to himself or others pursuant 18 U.S.C. § 4246. (Id. at 3:13–17.) The Government

4

noted, however, that while it did not dispute that McAfee is not a danger under 18 U.S.C. § 4246, it would not concede the same under other relevant statutes, such as the Bail Reform Act, 18 U.S.C. § 3142. (Id. at 2:10–13.)

## II. Discussion

As a preliminary matter, the Court finds that McAfee presently is not competent to stand trial and the likelihood of his regaining competency is minimal. The Court also finds that, presently, McAfee's mental disease does not create a substantial risk of bodily injury to another person or serious damage to property of another under 18 U.S.C. § 4246. Accordingly, and because the Government does not object to McAfee's request to be discharged from federal custody, the Court grants that branch of McAfee's motion.

Before turning to the conditions of McAfee's release, however, the Court must first resolve his additional request to dismiss the Indictment, which impacts whether the Bail Reform Act, 18 U.S.C. § 3142, applies and whether the Court may impose certain "reasonable" conditions on McAfee's release as requested by the Government.

### A. Dismissal of the Indictment

McAfee argues that the Indictment should be dismissed, and the prosecution of this case terminated, because "unnecessary delay" has and prospectively will occur in bringing McAfee to

trial due to the BOP's inability to restore him to competence. Further, McAfee argues, he has already served a term in federal custody that is equivalent to the applicable Guidelines range for his offense had he simply been sentenced instead of hospitalized by the BOP.  Accordingly, McAfee argues, because the Government does not intend to move for dismissal of the Indictment pursuant to Federal Rule of Criminal Procedure 48(a), and the Government no longer has a purported "punitive interest" in this case, the Court has discretion to dismiss the charges against him pursuant to Rule 48(b)(3), which allows a court to dismiss an indictment "if unnecessary delay occurs in . . . bringing a defendant to trial." Fed. R. Crim. P. 48(b)(3).

The Government argues that dismissal of the Indictment is not warranted at this time because the relevant statutory framework does not require dismissal and the seriousness of the offense and McAfee's history and characteristics all counsel in support of placing supervisory conditions on his release. McAfee concedes that dismissal under the circumstances here is not mandatory, but rather, is left to the Court's discretion. (Mem. of L. at 16, 22, ECF No. 56; Reply at 4, ECF No. 58.)  The Government proposes that "after a reasonable period of time, the parties and the Court may then evaluate [McAfee's] progress and pursue any prudent next steps including, potentially, eventual dismissal of the Indictment."  (Opp'n at 2, ECF No. 57.)

The circumstances of this case are unusual, and the Court is sensitive to McAfee's argument that where a defendant has been declared incompetent and not statutorily dangerous enough to be indefinitely hospitalized, he should not be forced to endure undue turmoil that may be caused by allowing charges to stand which have no practical purpose. In support of this argument, McAfee relies on United States v. Salerian, No. 13 Cr. 17 (JPJ), 2016 WL 8732377 (W.D. Va. Mar. 11, 2016), which dismissed an indictment where, as here, the defendant was found to be incompetent and not a danger under 18 U.S.C. § 4246. Salerian is instructive, but the circumstances of that case are readily distinguishable in one important respect: In Salerian, the defendant was charged with unlawfully distributing controlled substances and conspiring to distribute controlled substances. Id. at *1. Unlike this case, however, the court in Salerian determined that the defendant was not a danger to himself or others, in part, because he no longer held a medical license, and thus, he was unable to unlawfully prescribe controlled substances in the future. Id. at *2, *3. No such restriction on McAfee's potential future conduct exists. Indeed, it is entirely possible that McAfee's offense conduct—robbery and attempted robbery—may recur given his serious mental health issues, which include "a grandiose delusional belief system," hallucinations, and a "significant" history of

7

substance abuse—including use of synthetic marijuana "K2" while in federal custody.  (Letter from T. Scarantino, Complex Warden, to Hon. John F. Keenan at 4–5.)  Accordingly, the Court agrees with the Government that dismissal of the Indictment is not appropriate at this time, and it joins other courts that have found the same. See, e.g., United States v. Ecker, 78 F.3d 726, 732 (1st Cir. 1996) (holding neither the competency statutes nor Supreme Court precedent require dismissal of an indictment, and "[b]ecause the prosecutor wishes to keep [the defendant's] indictment pending, the government has a continuing punitive interest in [him]") (emphasis in original); United States v. West, No. 03 Cr. 128 (WYD), 2007 WL 1851305, at *6 (D. Colo. June 26, 2007) (denying request to dismiss an indictment where the defendant was deemed incompetent but not found to be dangerous).

    **B.  Release**

The Bail Reform Act, 18 U.S.C. § 3142, provides that "a person charged with an offense, . . . pending trial, . . . [may be] released on a condition or combination of conditions" so long as the conditions imposed "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(a)(2), (c)(1)(B).

McAfee argues that the Bail Reform Act does not apply to his release, and he cites two out-of-Circuit cases in support:

8

Salerian, 2016 WL 8732377, at *3 (dismissing indictment without prejudice and ruling that "[g]iven that the defendant is not pending trial in any genuine way, I find that the Bail Reform Act, which serves as the basis for his current supervision, no longer applies to him"), and United States v. Peppi, No. 06 Cr. 157 (AET), 2007 WL 674746, at *5 (D.N.J. Feb. 28, 2007) (ruling the Bail Reform Act does not apply "[b]ecause [the defendant] cannot be brought to trial now, [and] it seems an impermissible fiction to pretend that one is pending").  The Second Circuit, however, has yet to decide whether the Bail Reform Act applies to an incompetent defendant such as McAfee. See United States v. Magassouba, 544 F.3d 387, 413-14 (2d Cir. 2008) ("We need not here decide what conclusion we would reach on facts similar to those in Peppi.").

As discussed above, this case is unusual.  Although the likelihood of McAfee ever regaining competency is minimal, the finding that his mental illness presently does not create a substantial risk of bodily injury to another person or serious damage to property of another under 18 U.S.C. § 4246 may change depending on how McAfee's illness progresses after his release.  Accordingly, because the Indictment remains pending, and McAfee's competency or dangerousness may need to be reassessed in the future, the Court finds that Bail Reform Act applies. Cf. Magassouba, 544 F.3d at 413 ("While an incompetent criminal

9

defendant cannot be placed 'on trial' consistent with due process, there is no similar constitutional bar to his remaining 'pending trial' while competency proceedings are resolved."). Accordingly, McAfee shall be released subject to the conditions set forth in Section III below, the general features of which McAfee's counsel agrees are appropriate.  (Tr. at 8:23–9:6, 12:4–19.)

Turning to McAfee's additional request that the BOP administer a test for the coronavirus, COVID-19, and place him in quarantine before he is released, the Court agrees that such measures are appropriate and necessary to safeguard the community before McAfee is returned to it.  COVID-19, of course, is the deadly pandemic impacting all corners of the world, including BOP facilities where at least 35,426 federal inmates have been infected by the virus, 182 of whom have died. See COVID-19 Cases, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited Jan. 7, 2021). Although the Government does not object to McAfee's reasonable and prudent request, the Court lacks the authority to issue such an order to the BOP.  See, e.g., United States v. Kanagbou, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (summary order) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence."). Nevertheless, the Court, in the strongest terms possible,

recommends that the BOP take such steps to ensure McAfee's safety and the safety of the community to which he will return.

Finally, McAfee requests the Court order the U.S. Marshals Service (USMS) transport him from the Metropolitan Correctional Center in Manhattan to his mother's home near Trenton, New Jersey when he is released. The Government opposes the request on that grounds that it lacks any statutory basis and constitutes an unreasonable hardship for the USMS due to the COVID-19 pandemic. The Court agrees with the Government. Accordingly, McAfee's counsel, not the USMS, is directed to assist McAfee with obtaining transportation to his mother's home. McAfee's counsel may submit such expenses for reimbursement pursuant to his appointment under the Criminal Justice Act.

### III. Order

In view of the above, it is hereby ORDERED that, by no later than February 1, 2021, Defendant Lawrence McAfee is to be RELEASED subject to the following terms:

- McAfee shall be subject to supervision by Pretrial Services;

- McAfee shall comply with all directions he receives from Pretrial Services;

- McAfee is not required to post a monetary bond;

- McAfee's travel is restricted to the District of New Jersey, and to the Southern and Eastern Districts of New York for the purposes of court appearances, attorney

11

  visits, medical treatment, or other reasons approved by Pretrial Services;

- McAfee's travel restrictions shall be enforced by GPS monitoring technology;

- McAfee is to report, within 72 hours of his release, to the Crisis Center, Capital Health Medical Center, on Brunswick Avenue in Trenton, New Jersey, for psychiatric examination and treatment.

- McAfee shall reside in his mother's home in Ewing, New Jersey, or another location approved by Pretrial Services such as an appropriate medical, psychological or psychiatric facility;

- McAfee shall not commit a Federal, State or local crime;

- McAfee shall not possess a firearm, destructive device, or other weapon;

- McAfee shall not use or unlawfully possess a narcotic drug or other controlled substance as defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner;

- McAfee shall refrain from consuming alcohol;

- McAfee shall submit to testing for a prohibited substance as required by Pretrial Services;

- McAfee shall participate in a program of inpatient or outpatient mental health therapy and/or substance abuse therapy if recommended by a licensed medical practitioner or Pretrial Services;

- McAfee shall take all medications prescribed by a licensed medical practitioner, including medications prescribed by physicians at FMC Butner;

- McAfee shall report to Pretrial Services, as soon as possible, every contact with law enforcement personnel, including arrests, questioning, or traffic stops; and

- By no later than June 25, 2021, McAfee shall provide the Court with a report from a licensed medical practitioner setting forth an update regarding McAfee's mental health status, the conditions of his treatment, whether he has

attained competency or likely will attain competency, and whether his mental disease would create a substantial risk of bodily injury to himself or another person, or serious damage to property of another.

It is FURTHER ORDERED that the FEDERAL BUREAU OF PRISONS is strongly recommended to test McAfee for the coronavirus, COVID-19, as soon as possible and to place him in quarantine until his release.

Finally, the FEDERAL BUREAU OF PRISONS shall provide a copy of McAfee's medical records to him during his release, which must include a list of all prescriptions and medications the BOP is providing to him.

### IV. Conclusion

For the reasons set forth above, Defendant Lawrence McAfee's motion for release from federal custody is GRANTED subject to the conditions in Section III above. McAfee's motion to dismiss the Indictment is DENIED.

The Clerk of Court is directed to terminate the motions at ECF Nos. 53 and 54.

**SO ORDERED.**

Dated:  New York, New York
        January 12, 2021

　　　　　　　　　　　　　　　　　　　　　_John F. Keenan_
　　　　　　　　　　　　　　　　　　　　　John F. Keenan
　　　　　　　　　　　　　　　　　　　　United States District Judge